NO. 07-09-0300-CR

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



MAY
26, 2010

 



 

TIMOTHY MARK RAMIREZ,  

                                                                                         

                                                                                         Appellant

v.

 

THE STATE OF TEXAS,  

 

                                                                                         Appellee

___________________________

 

FROM THE 121ST DISTRICT COURT OF TERRY
COUNTY;

 

NO. 5897; HONORABLE KELLY G. MOORE,
PRESIDING

 



 

Memorandum
Opinion

 



 

Before
QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

            Timothy Mark
Ramirez was convicted of possessing at least one gram but less than four grams
of cocaine with intent to deliver.  On
appeal, he challenges the legal and factual sufficiency of the evidence showing
that he possessed the drugs and had the intent to deliver them to others.  We affirm the judgment.  

            Background

            On December 13, 2008, the Brownfield
Police Department executed a search warrant at the home of Crystal Garza.  Those present were Crystal, her two small
daughters, Sammy Martinez, and appellant. 
The latter was Crystal’s intermittent boyfriend and the father of the
two children.  When the police entered,
both appellant and Crystal informed them of the drugs’ location.  According to one officer, appellant not only
said that “he’ll show us where everything was at” but also that “’[t]hey had
nothing to do with it’” and “[l]et them go.’” 
In a dresser upon which were placed men’s underwear and socks were found
several individual packets of cocaine. 
Also discovered in the same dresser was approximately $1300 in
cash.  The cash consisted of five, ten,
and twenty dollar bills, which denominations were normally found on those  selling drugs, according to one officer.  A police scanner and a set of scales (two
items also used in the drug trade according to the officer), were discovered on
or in the dresser as well.  So too did
those searching the abode find checks payable to appellant, a crack pipe, a
black book with names and numbers in it, and plastic baggies with the corners
cut off.  Several of the latter items,
though, were found in another bedroom as opposed to the master bedroom where
the drugs and money were located.  

            Sufficiency of the Evidence 

            As
previously stated, appellant attacks the legal and factual sufficiency of the
evidence showing that he knowingly possessed the drugs with intent to
deliver.  The pertinent standards of
review are well known and need not be reiterated.  They can be found in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979) and Watson v. State, 204
S.W.3d 404 (Tex. Crim. App. 2006).  

            Next, to
convict appellant of the charged offense, the State was required to prove that
he intentionally and knowingly possessed cocaine with intent to deliver.  Tex.
Health & Safety Code Ann. §481.112(c) (Vernon Supp. 2009).  Upon perusing the record to determine whether
those elements were established, we came upon the following evidence.   

            Appellant
was in the house at the time, and though he supposedly lived elsewhere, he intended
to spend the night and was receiving friends there before the raid.  Checks addressed to him were also at the
house.  Men’s boxer shorts and socks were
located in the master bedroom atop one of the two dressers; ladies
undergarments were found in the other dresser. 
The individually wrapped packets of cocaine, packets of money, scales,
and police scanner were found in or on the dresser upon which were located the
men’s boxer shorts.  And, most
importantly, appellant not only directed the officers to the location of the
drugs but also said that others present should be released because they had
nothing to do with the substances.  That
the denomination of the paper money discovered coincided with that possessed by
drug traffickers was another bit of evidence upon which a rational jury could
have relied in reaching its verdict.  The
same can be said of the scales and police scanner.  Nor can we ignore Crystal’s testimony that
the drugs were acquired not only for her use but to distribute or “give” to others
or her friends.  When taken together, the
sum of this evidence was enough to permit a rational jury to link appellant to
the drugs and conclude beyond reasonable doubt that he exercised care, custody
and control over them with the intent to deliver.  Evans
v. State, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006).

            Admittedly,
Crystal testified that she owned the drugs, that appellant knew nothing of them,
that she bought them to distribute at a bachelorette party, that she was estranged
from appellant (though she already had two children by him and was pregnant
with his child at the time of trial, sought financial help from him, and allowed
him to sleep over), that she owned and wore the men’s boxer shorts that were
atop the dresser, and that she owned and read the sexually explicit men’s magazines
depicting nude women which were found at the house.  Yet, that simply created a question of fact
regarding who actually possessed the contraband.  So too did it raise credibility issues which
were for the jury to decide.  And, though
the jury was free to accept her version of the circumstances, it was not
required to do so.  Indeed, it could well
have concluded that she was less than truthful in order to save from prison the
father of her expected child upon whom she relied for financial assistance.  If in prison, he would not be able to provide
her the financial support which she admittedly sought from him.  That she had already been granted probation
by the time she testified and was unlikely to be further prosecuted by the time
she testified could have also been a factor considered by the jury in assessing
her veracity.  Consequently, we cannot
say that the jury’s verdict was against the great weight of the evidence or
manifestly wrong.

            Accordingly,
we overrule appellant’s issues and affirm the judgment. 

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice

Do not publish.